UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT ANDREW WITZKE,

    Plaintiff,

v.

RUSS MARLAN, Deputy Director, Field
Operations Administration, Michigan Department
of Corrections; ALEX J. SMITH, Parole/Probation
Agent, Michigan Department of Corrections; and
EBONY M. PULLINS-GOVANTES, Parole Violation
Specialist, Field Operations Administration, Michigan
Department of Corrections, in their individual capacities
for monetary relief, and in their official capacities for
declaratory and injunctive relief,

    Defendants.

Case No. 2:16-cv-13753
District Judge Arthur J. Tarnow
Mag. Judge Anthony P. Patti

## AMENDED/SUPPLEMENTAL COMPLAINT WITH JURY DEMAND

This is a *pro se* civil rights action brought by Plaintiff Scott Andrew Witzke under the provisions of 42 U.S.C. § 1983 alleging the deprivation of due process rights in connection with the willful circumvention of procedures established by the United States Supreme Court during the course of Plaintiff's arrests and two separate periods of detention for alleged parole violations. Plaintiff also alleges action against Defendant Smith under State of Michigan law for false arrest. Plaintiff seeks monetary relief against all defendants in their individual capacities, as well as declaratory and injunctive relief against defendants in their official capacities.

## I. Jurisdiction

1. Plaintiff invokes the Court's subject matter jurisdiction under the provisions of 42 U.S.C. § 1983; 28 U.S.C. § 1331; 28 U.S.C. § 1367; 28 U.S.C. §§ 2201-2202; and the Due Process Clause of U.S. Const. Am. XIV.

## II. Venue

2. Venue is based in accordance with the provisions of 28 U.S.C. § 1391(b)(1) & (2), as a substantial portion of the events giving rise to the underlying causes of action arose in the Eastern District of Michigan and Defendants Smith and Pullins-Govantes, upon information and belief, resides in the Eastern District of Michigan.

## III. Parties

3. Plaintiff Scott Andrew Witzke is currently, and was at all times relevant to the instant amended/supplemental complaint, a parolee under the jurisdiction of the Michigan Department of Corrections ("MDOC") and is serving sentences for uttering and publishing. *See* Mich. Comp. Laws § 750.249.

4. Defendant Russ Marlan is employed by the State of Michigan as Deputy Director of the MDOC's Field Operations Administration ("FOA"), and pursuant to Mich. Comp. Laws § 791.231 Defendant Marlan's duties and responsibilities include "direct[ing] and supervis[ing] the work of the bureau of

field services and … formulat[ing] methods of investigation and supervision and develop[ing] various processes in the techniques of supervision by the parole staff." Defendant Marlan is sued in his individual and official capacities.

5. Defendant Alex J. Smith is employed by the State of Michigan as a Parole/Probation Agent within the MDOC and, pursuant to Mich. Comp. Laws § 791.239, Defendant Smith's duties and responsibilities include causing the arrest and detention of alleged parole violators if he "has reasonable grounds to believe that the prisoner has violated parole[.]" Defendant Smith is sued in his individual and official capacities.

6. Defendant Ebony M. Pullins-Govantes was at all times relevant to the instant amended/supplemental complaint employed by the State of Michigan within the MDOC as a "Parole Violation Specialist," and as such she imposed sanctions upon alleged parole violators, including having imposed sanctions upon Plaintiff Witzke.

7. At all times relevant to the instant amended/supplemental complaint each named defendant acted under color of state law.

## IV.  Statement of Facts

8. Plaintiff was enlarged on parole status on May 26, 2016 by order of the Michigan Parole Board and he was assigned to the case load of Defendant Smith for supervision purposes.

9. The order of parole signed by Plaintiff directed that he reside at a residential address in the City of Romulus, Michigan.

10. On or about September 6, 2016 Defendant Smith verbally directed Plaintiff to change residence and relocate to a "halfway house" in River Rouge, Michigan ("Better Days Aftercare").  No amendment or modification to the parole order was ever made.[1]

11. Upon information and belief payment for Plaintiff to reside at the halfway house was made by the State of Michigan indirectly through a vendor ("PCS, Inc."), who is a contract vendor for MDOC.

12. Defendant Smith and a Better Days Aftercare staff member (Kevin Hart) directed Plaintiff to pay $125 a month of Plaintiff's SNAP benefits to Better Days Aftercare.

---

[1] Mich. Comp. Laws § 791.236(3) provides that "[a] parole order may be amended at the discretion of the parole board for cause.  An amendment to a parole order shall be in writing and is not effective until notice of the amendment is given to the parolee."

4

13.     Plaintiff, after consultation with Michigan Department of Health & Human Services staff and attorneys, subsequently refused/failed to comply with the directive of Defendant Smith and Mr. Hart to turn his "Bridge" card with SNAP benefits and PIN number over to Better Days Aftercare staff members.[2]

14.     Plaintiff's parole order effective May 26, 2016 did not contain a curfew restriction, nor did the order contain a condition that Plaintiff reside at Better Days Aftercare.

15.     At no time relevant to the instant amended/supplemented complaint did Defendant Smith or anyone else provide Plaintiff with written modifications or amendments to the May 26, 2016 parole order.

16.     On or about September 28, 2016, at the Lincoln Park, Michigan parole office, Defendant Smith caused Plaintiff to be arrested, handcuffed, and detained for alleged violations of the conditions of parole--the allegations of which were not described to Plaintiff until some five days after his arrest.

17.     On or about September 28, 2016, after Plaintiff's arrest at the parole office, Plaintiff was transported to and detained at the Detroit Reentry Center ("DRC"), a Level II prison in all respects, located within the City of Detroit.

---

[2] The practice described violates federal criminal law.  See 7 U.S.C. § 2024(b)(1)(regarding unlawful transfer of SNAP benefits to third parties).

18. On or about October 3, 2016, at DRC, Plaintiff was served by a MDOC parole agent with two written allegations of violations of parole, at which time Plaintiff waived a preliminary parole violation hearing. The Parole Violation Charges document above Plaintiff's signature states: "I understand that waiver of the preliminary hearing is not an admission of guilt and that I still have the right to a full-revocation hearing before the Parole and Commutation Board."

19. The charges of parole violations contained within the document served upon Plaintiff on or about October 3, 2016 alleged the following violations by Plaintiff:

> **Count 1, Violation of Conditions 10 and Special Condition 4.3, Must reside at:** On or about 9/28/2016, you failed to comply with the written Order of Parole Board 4.3 by failing to reside at Better Days After Care [sic] as a part of the Community Mental Health Housing program.[3]
>
> **Count 2, Violation of Condition 10, Special Conditions:** On or about 9/28/2016 you failed to comply with the house rules at Better Days Aftercare. You failed to pay for housing and/or follow curfew rules.[4]

20. Defendant Smith, based on the fact that Plaintiff's parole order effective May 26, 2016 was never amended or modified, as required by statute

---

[3] Plaintiff *did* reside at Better Days Aftercare on the referenced date. He awoke at the halfway house, ate breakfast, and went to the Lincoln Park parole office to make his regularly scheduled report with Defendant Smith.

[4] What is not stated is that the "violation" for purportedly not paying for housing is based upon Plaintiff's refusal to give his Bridge card with SNAP benefits and PIN number to halfway house staff. Moreover, the parole order in effect did not require Plaintiff to follow any halfway house rules.

6

before adding or modifying conditions of parole, and based on the fact that transfer of SNAP benefits to third parties is unlawful under federal law, had no reasonable grounds to believe that Plaintiff violated the conditions of the parole order.

21. On or about October 5, 2016 Defendant Pullins-Govantes, who is not a member of the Michigan Parole Board nor an attorney hearings officer, personally made a finding, without providing Plaintiff with any form of hearing or interview, that "Parolee [Witzke] failed to follow housing rules and got kicked out."

22. On or about October 5, 2016 Defendant Pullins-Govantes personally made a decision, without providing Plaintiff with any form of hearing or interview, to sanction and incarcerate Plaintiff for a period of 10 days and to then continue Plaintiff on parole with no amendments or modifications to the May 26, 2016 parole order.[5]

23. On or about October 5, 2016 a DRC parole/probation officer informed Plaintiff of Defendant Pullins-Govantes' sanction determination, and stated to Plaintiff that Plaintiff would be released on or about Tuesday, October 11, 2016.

---

[5] Plaintiff was incarcerated for a period of 14 days, not 10 days as directed by Defendant Pullins-Govantes.

24. At no time relevant to Plaintiff's arrest and detention for the period of on or about September 28, 2016 through on or about October 11, 2016 did Plaintiff waive a formal parole revocation hearing or otherwise admit guilt to the alleged parole violations served upon Plaintiff on or about October 3, 2016.

25. Plaintiff's detention at DRC from on or about September 28, 2016 through on or about October 11, 2016 was based solely upon the purported allegations of parole violations by Plaintiff, as set forth in the written parole violations charges served upon Plaintiff on or about October 3, 2016.

26. Plaintiff's MDOC records reflect that he did commit the two violations of parole, as reflected in the parole violation charges which were served upon Plaintiff on or about October 3, 2016.

27. DRC is a Level II prison operated by the MDOC and under the direct supervision of MDOC's FOA bureau, of which Defendant Marlan, at all times relevant to the instant amended/supplemental complaint, was in charge of.

28. DRC operates under the policy directives of the MDOC, unless a policy directive specifically exempts the DRC.

29. Defendant Marlan has implicitly authorized, knowingly acquiesced, and/or encouraged FOA employees, including Defendants Smith and Pullins-Govantes, in following and adhering to an unwritten policy, custom, and/or

procedure which allows parolees (including Plaintiff) to be arrested, detained, charged with parole violations, and then imposing a "sanction" upon parolees (including Plaintiff) for "violating" the conditions of parole without either (a) parolees waiving a formal hearing, or (b) parolees admitting to conduct which establishes that parole violations did occur.

30. On or about April 20, 2017 Plaintiff was arrested and detained at the DRC for alleged parole violations.

31. On or about April 24, 2017 Plaintiff was served by a MDOC parole agent with three written allegations of violations of parole, at which time Plaintiff waived a preliminary parole violation hearing. The Parole Violation Charges document above Plaintiff's signature states: "I understand that waiver of the preliminary hearing is not an admission of guilt and that I still have the right to a full-revocation hearing before the Parole and Commutation Board."

32. The charges of parole violations contained within the document served upon Plaintiff on or about October 3, 2016 alleged the following violations by Plaintiff:

> **Count 1, Violation of Condition 10 and Special Condition 2.1, Treatment Program:** On or about 1/31/17, you failed to comply with the written Order of Parole Board 2.1 by failing to attend treatment at DRMM (Oasis) as instructed.

>    **Count 2, Violation of Condition 01, Contact field agent:** On or about 2/1/17, you failed to make your regularly scheduled report to your field agent or to make any subsequent report.
>
>    **Count 3, Violation of Condition 02, Not move:** On or about 1/31/17, you changed your residence at the Detroit Rescue Mission - 13220 Woodward, Highland Park, without the permission of your field agent.

33.   On or about May 3, 2017 Plaintiff was served with a new Order of Parole entered by the Michigan Parole Board, and this Order required Plaintiff to complete a "non-residential" substance abuse treatment program ("ASAT") at DRC. Plaintiff was detained at DRC until on or about September 6, 2017.

35.   At no time relevant to Plaintiff's arrest and detention for the period of on or about April 20, 2017 through on or about September 6, 2017 did Plaintiff waive a formal parole revocation hearing or otherwise admit guilt to the alleged parole violations served upon Plaintiff on or about April 24, 2017.

36.   On or about May 1, 2017 Defendant Pullins-Govantes, who is not a member of the Michigan Parole Board nor an attorney hearings officer, personally made a finding, without providing Plaintiff with any form of hearing or interview, that Plaintiff was a "[s]hort term absconder mismanaging mental health diagnosis by abusing cocaine … [a]lso has treatment failure."

37.     Plaintiff was not charged with substance abuse while he was purportedly a parole absconder, and he was not provided with any hearing at which he could have defended against such a charge.

38.     On or about May 1, 2017 Defendant Pullins-Govantes personally made a decision, without providing Plaintiff with any form of hearing or interview, to sanction and incarcerate Plaintiff for a period of time at DRC, to complete the ASAT program, and to then continue Plaintiff on parole.

39.     Plaintiff's MDOC records reflect that he did commit the three violations of parole, as reflected in the parole violation charges which were served upon Plaintiff on or about April 24, 2017.

40.     On or about September 6, 2017 Plaintiff was released from DRC on parole status.

**V.     Statement of CLaims/Causes of Action**

*First Cause of Action*

39.     Plaintiff restates and hereby incorporates by reference the facts as set forth herein in ¶¶ 1-40 as if set forth fully herein.

40.     Defendants, through their actions, each personally and knowingly participated and/or acquiesced in depriving Plaintiff of his rights under the Due Process Clause of U.S. Const. Am. XIV by:

11

      a.)    Defendant Smith causing Plaintiff to be arrested on or about September 28, 2016 at the Lincoln Park MDOC Parole Office without reasonable grounds to believe that Plaintiff had committed a violation of the conditions of parole;

      b.)    Defendant Marlan knowingly causing and/or allowing policies and practices to exist which deprived Plaintiff of a parole violation hearing in connection with the parole violation charges which were served upon Plaintiff on or about October 3, 2016 and April 24, 2017; and

      c.)    Defendant Pullins-Govantes' depriving Plaintiff of any form of hearing in connection with the parole violation charges served upon Plaintiff on or about October 3, 2016 and April 24, 2017 before making findings that Plaintiff did violate the conditions of parole and making the decisions on or about October 5, 2016 and May 1, 2017 to cause Plaintiff to be "sanctioned" for a period of days at DRC, the first sanction being 10-days incarceration (actually 13 days), and the second sanction lasting 140 days.

### *Second Cause of Action*

    41.    Plaintiff restates and hereby incorporates by reference the facts as set forth herein in ¶¶ 1-40 as if set forth fully herein.

42.     Defendant Smith, under Michigan common law and Mich. Comp. Laws § 791.239, committed the tort of false arrest/false imprisonment when Defendant Smith arrested Plaintiff on or about September 28, 2016 at the Lincoln Park MDOC Parole Office without reasonable grounds to believe that Plaintiff violated the conditions of parole, and when he caused Plaintiff to be detained in custody on the basis of the parole violation charges served upon Plaintiff on or about October 3, 2016.

## VI.    Relief Requested

Plaintiff, Scott Andrew Witzke, respectfully requests that this Honorable Court **GRANT** Plaintiff the following relief:

A.      A declaration that the arrest of Plaintiff on or about September 28, 2016, caused by Defendant Smith, for alleged parole violations was made absent reasonable grounds to believe that parole violations were committed by Plaintiff, and that Mich. Comp. Laws § 791.239 creates a protectable liberty interest under U.S. Const. Am. XIV in Plaintiff not being arrested for parole violations in Michigan absent the presence of reasonable grounds to believe that parole violations have been committed when no warrant has been issued;

B.      A declaration that the actions of Defendants Marlan and Pullins-Govantes, with respect to causing Plaintiff to be deprived twice of the

two-step parole violation process dictated by *Morrissey v. Brewer*, 408 U.S. 471 (1972), prior to Plaintiff having been found guilty of parole violations and sanctioned, is contrary to the Due Process Clause of U.S. Const. Amend. XIV;

  C. Grant Plaintiff preliminary and permanent injunctive relief which would, at minimum, enjoin Defendants Marlan and Pullins-Govantes, their agents, and successors from finding that Plaintiff has committed parole violations and sanctioning Plaintiff absent affording Plaintiff the two-step parole violation hearing process as dictated by *Morrissey v. Brewer, supra.*;

  D. Grant Plaintiff permanent injunctive relief which expunges all records maintained by MDOC with respect to the parole violation charges served upon Plaintiff on or about September 28, 2016 and April 24, 2017;

  E. Grant Plaintiff $1,500.00 compensatory damages against each defendant personally for each day Plaintiff was incarcerated from on or about September 28, 2016 through on or about October 11, 2016;

  F. Grant Plaintiff $1,500.00 compensatory damages against Defendants' Marlan and Pullins-Govantes personally for each day Plaintiff was incarcerated from on or about April 20, 2017 through on or about September 6, 2017;

  G. Grant Plaintiff $100,000.00 punitive damages against each Defendant personally for conduct which occurred between September 28, 2016 through October 11, 2016;

  H. Grant Plaintiff $500,000.00 punitive damages against each Defendant personally for conduct which occurred between April 20, 2017 through September 6, 2017;

  I. Set this matter for jury trial, as demanded herein in Plaintiff's jury demand;

  J. Grant Plaintiff such additional relief as he may be entitled to.

           Respectfully submitted,

Dated: November 14, 2017    *Scott A. Witzke*
           _____
           SCOTT ANDREW WITZKE
           Plaintiff, *pro se*
           353 W. Huron St.
           Pontiac, MI 48341
           Telephone: (313) 473-9699
           Email: scottawitzke@aol.com

## JURY DEMAND

Plaintiff **HEREBY DEMANDS** trial by jury on the issues of liability and damages.

Dated:  November 14, 2017    *Scott A. Witzke*
                              _____
                              SCOTT ANDREW WITZKE
                              Plaintiff, *pro se*

### CERTIFICATE OF SERVICE

The undersigned duly certifies that on this 14th day of November, 2017, he electronically filed the foregoing document with the Clerk of the Court utilizing the Court's CM/ECF system, which will send notification to all counsel and participating *pro se* parties.

*Scott A. Witzke*
_____
SCOTT ANDREW WITZKE
Plaintiff, *pro se*