UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT ANDREW WITZKE,

    Plaintiff,

v.

EBONY M. PULLINS-GOVANTES,

    Defendant.

_____/

Case No. 16-13753

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ANTHONY P. PATTI

**ORDER ADOPTING REPORT AND RECOMMENDATION [74]; OVERRULING DEFENDANT'S OBJECTIONS [76]; AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [60]**

On October 21, 2016, Plaintiff Scott Andrew Witzke, a parolee, brought claims against various Michigan Department of Corrections ("MDOC") officials pursuant to 42 U.S.C. § 1983. [Dkt. # 1]. On March 20, 2017, the Court referred all pretrial matters to the Magistrate Judge. Since then, Mr. Witzke has been discharged from MDOC jurisdiction [68], and Defendants Smith and Marlan have been dismissed by stipulated order [72]. On March 15, 2018, Plaintiff filed a Motion for Partial Summary Judgment as to the only remaining Defendant, Parole Violation Specialist Ebony Pullins-Govantes [60]. This motion is now fully briefed. On October 19, 2018 the Magistrate Judge issued a Report and Recommendation (R&R) [74] advising the Court to grant Plaintiff's Partial Motion for Summary Judgment.

The Defendant objected to the R&R on November 2, 2018 [76], and Plaintiff responded to this objection on December 12, 2018 [79].

For the reasons discussed below, the Court **ADOPTS** the R&R [74]. Defendant's Objection [76] is **OVERRULED**. Plaintiff's Motion for Partial Summary Judgment [60] is **GRANTED**.

## FACTUAL BACKGROUND

The factual background is set forth as follows by the R&R:

a. Plaintiff's May 26, 2016 parole order

According to Plaintiff, his parole order was dated May 26, 2016. (DE 47 ¶ 8; see also DE 67-2 ¶ 12.) By way of background, "[w]hen a parole order is issued, the order shall contain the conditions of the parole and shall specifically provide proper means of supervision of the paroled prisoner in accordance with the rules of the bureau of field services." Mich. Comp. Laws Ann. § 791.236(4). As Plaintiff's parole order does not appear to be part of the record in this case, its terms are not clear, nor are Plaintiff's supervision conditions listed in the Offender Tracking Information System (OTIS), presumably because Plaintiff was discharged from the MDOC's jurisdiction on February 12, 2018. See www.michigan.gov/corrections, "Offender Search" (last visited Oct. 15, 2018). At best, the Court can only assume it contains the 13 or 14 "special conditions," described by number on Plaintiff's MDOC Parole Violation Worksheet and Decision Forms (CFJ-226), and these conditions only seem to carry a substantive description if they are the subject of the incident at issue. (DE 60-3, DE 60-5.) In other words, on the record before it, the Court cannot place the alleged violations at issue here within the context of Plaintiff's May 26, 2016 parole order.

That being said, according to MDOC policy, "[a] field agent, law enforcement officer, or a Department employee authorized by the Director to arrest a parole violator, may arrest and restrain a parolee without a warrant and detain the parolee in any jail of the State if s/he has reasonable grounds to believe that the parolee violated parole or when a parole

violation warrant has been issued." MDOC PD 06.01.120 ¶ J, effective Mar. 9, 2015. See also Mich. Comp. Laws § 791.239 ("Arrest without warrant; detention of paroled prisoner"), Mich. Comp. Laws § 791.238(1) ("Each prisoner on parole shall remain in the legal custody and under the control of the department. The deputy director of the bureau of field services, upon a showing of probable violation of parole, may issue a warrant for the return of any paroled prisoner. Pending a hearing upon any charge of parole violation, the prisoner shall remain incarcerated.").

b. The September 28, 2016 arrest

Plaintiff received a parole violation dated August 29, 2016 for "residing with a known felon[.]" (DE 60-3 at 1, DE 60-5 at 1, DE 67-2 ¶ 7.) Plaintiff claims that, on or about September 6, 2016, he was directed to relocate to Better Days Aftercare in River Rouge, MI and "to pay $125 a month of [hi]s SNAP [Supplemental Nutrition Assistance Program] benefits to Better Days Aftercare." (DE 47 ¶ 10-12.) Plaintiff "refused/failed to comply" with this directive. (DE 47 ¶ 13.) Plaintiff claims his parole order did not contain either a curfew restriction or a condition that he reside at Better Days Aftercare. (DE 47 ¶ 14.) Plaintiff further claims that he did not receive "written modifications or amendments to the May 26, 2016 parole order." (DE 47 ¶ 15.)

On September 28, 2016, Plaintiff was arrested by MDOC Staff and detained at DRC [Detroit Re-entry Center], which Plaintiff describes as a Level II prison. (DE 60-3 at 1; DE 47 ¶¶ 16-17, 27.) The parole violation charges allege that, on or about September 28, 2016, Plaintiff failed to comply with "the written Order of Parole Board 4.3 by failing to reside at Better Days After Care as part of the Community Mental Health Housing program[,]" and "the house rules at Better Days Aftercare[,]" by failing to "pay for housing and/or follow curfew rules." (DE 60-2 at 1 (emphasis added); DE 67-2 ¶ 7.) (See also DE 47 ¶¶ 16-17, 19.) These appear to be technical parole violations. Mich. Comp. Laws Ann. § 791.402(o) ("a violation of the terms of a parolee's parole order that is not a violation of a law of this state, a political subdivision of this state, another state, or the United States or of tribal law.").

Five days later, on October 3, 2016, Plaintiff waived his right to a preliminary parole violation hearing, but the form also states: "I understand that waiver of the preliminary hearing is not an admission of guilt and that I still have the right to a full revocation hearing before the Parole and

Commutation Board." (DE 60-2 at 2; DE 47 ¶ 18.) On October 5, 2016, following what appear to be two recommendations – one by agent Alex J. Smith and another by supervisor Carrie L. Skibinski - area manager Pullins-Govantes decided to continue Plaintiff's parole "with a 10-day lock up[,]" i.e., September 28 – October 8. (DE 60-3 at 1-2; see also DE 47 ¶¶ 21-22, DE 67-2 ¶ 8.) That same day, Plaintiff was informed he would be released on or about October 11, 2016, by which date he would have been sanctioned with 13 days of "incarceration.". (DE 47 ¶¶ 23-25, 40(c).)

    c. The April 20, 2017 arrest

It seems that Plaintiff received parole violations dated October 26, 2016 and January 27, 2017, each for testing positive for cocaine. (DE 60-5 at 1, DE 67-2 ¶ 7.) Plaintiff was arrested by the Absconder Recovery Unit (ARU) Staff on April 20, 2017 and detained at DRC. (DE 60-5 at 1; DE 47 ¶ 30.) The parole violation charges allege that, on or about January 31, 2017, Plaintiff "failed to comply with the written Order of Parole Board 2.1 by failing to attend treatment at DRMM (Oasis) as instructed[,]" and "changed [his] residence at the Detroit Rescue Mission . . . without the permission of [his] field agent." (DE 60-4 at 1 (emphasis added).) The charges also allege that, on or about February 1, 2017, Plaintiff **"failed to make [his] regularly scheduled report to [his] field agent or to make any subsequent report."** (Id.) (See also DE 47 ¶ 32, DE 67-2 ¶ 7 (boldfaced type added).) These also appear to be technical parole violations. Mich. Comp. Laws Ann. § 791.402(o).

On April 24, 2017, Plaintiff waived his right to a preliminary parole violation hearing, but the form also states: "I understand that waiver of the preliminary hearing is not an admission of guilt and that I still have the right to a full revocation hearing before the Parole and Commutation Board." (DE 60-4 at 2; DE 47 ¶ 31.) On May 1, 2017, following what appear to be Smith and Skibinski's recommendations, area manager Pullins-Govantes listed her decision as: "Reinstate, Residential ReEntry Program, Extend Term[,]" and provided the following reason:

> "Short term absconder mismanaging mental health diagnosis by abusing cocaine. Also has treatment failure. Reinstate w/ ASAT [Advanced Substance Abuse Treatment] programming at the DRC and extend parole term 6 months."

> (DE 60-5 at 1-2 (emphases added).) Plaintiff contends that he was not "charged with substance abuse while he was purportedly a parole absconder," or "provided with any hearing at which he could have defended against such a charge." (DE 47 ¶ 37.) Yet, Plaintiff complains, his MDOC records "reflect that he did commit the three violations of parole[.]" (DE 47 ¶ 39.)
>
> On or about May 3, 2017, Plaintiff was served with a new "Order of Parole," which "required [him] to complete a 'non-residential' substance abuse treatment program . . . at DRC." (DE 47 ¶ 33 (emphasis added).) According to Plaintiff, he was "detained at DRC until on or about September 6, 2017[,]" at which point he was "released . . . on parole status." (DE 47 ¶¶ 33, 40.) He alleges that, by September 6, 2017, he would have been sanctioned with approximately 140 days of "incarceration." (DE 47 ¶ 40(c).)

R&R 7-12.

## Defendant's Objections

The Magistrate Judge found that by ordering Mr. Witzke to be held in DRC custody, Defendant effectively revoked his parole, and therefore triggered the due process requirements detailed in *Morrissey v. Brewer*, 408 U.S. 471 (1972). Since Mr. Witzke was not afforded due process, he is entitled to partial summary judgment on his § 1983 claim. Defendant brings three objections to the R&R.

Defendant's first objection is that Plaintiff never suffered "an effective revocation of Parole that infringed upon his liberty interest." (Dkt. 76 pg. 2-3). Defendant does not contest that Mr. Witzke was not allowed to leave the DRC, but it argues that the Magistrate Judge's discussion of the facility's security features ("12-foot fences, electronic detection systems, razor-ribbon wire, gun towers and

buffer fencing") indicates only that Mr. Witzke was in custody, not that he suffered a revocation of parole. (Id.). Defendant cites Black's Law Dictionary's definition of parole revocation: "the administrative or judicial act of returning a parolee to prison because of the parolee's failure to abide by the conditions of parole." (Id.). The protections of *Morrissey* do not apply, the argument goes, because *Morrisey* dealt with a true violation of parole—one that that entailed returning the parolee to prison to serve out the remainder of his sentence.

Defendant's second objection is that Mr. Witzke is not due a hearing because there is no suggesting that he ever requested a revocation hearing before the parole board, or that he contested any of the facts that led to his arrest. See *Morrissey*, 408 U.S. at 487-88 ("There must also be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority.").

Defendant's third objection is that Pullins-Govantes is owed qualified immunity. This argument relies on the first objection; that is, Plaintiff's parole was not revoked, and Defendant therefore did not violate a clearly established right.

## ANALYSIS

The first objection raises one question: Was Mr. Witzke's parole revoked within the meaning *Morrissey* when he was held in custody at the DRC? On the one hand, Mr. Witzke was denied the liberty that defines the concept of parole. On the other hand, parole revocation is a technical process that involves a determination,

after a hearing, by the Michigan Parole and Commutation Board and entails the parolee being returned to a state correctional facility. It is governed by M.C.L. 791.240a.

Constitutionally, the parole revocation hearing must entail a determination not only whether the parolee violated the conditions of his release, but also whether "circumstances in mitigation suggest that the violation does not warrant revocation." *Morrisey*, 408 U.S. at 488. In Michigan, a parolee has several rights, including a right to counsel, at such a hearing. MCL 791.240a.

> (5) An accused parolee shall be given written notice of the charges against him or her and the time, place, and purpose of the fact-finding hearing. At the fact-finding hearing, the accused parolee may be represented by a retained attorney or an attorney appointed under subsection (4) and is entitled to the following rights:
> (a) Full disclosure of the evidence against him or her.
> (b) To testify and present relevant witnesses and documentary evidence.
> (c) To confront and cross-examine adverse witnesses unless the person conducting the fact-finding hearing finds on the record that a witness is subject to risk of harm if his or her identity is revealed.
> (d) To present other relevant evidence in mitigation of the charges.

MCL 791.240a(5).

Mr. Witzke, though he was kept in custody for almost 5 months, was provided none of this due process. This accords with the statute, that specifies that a paroled prisoner is entitled to a hearing when he is returned to a state correctional facility, not merely when he is returned to custody. MCL 791.240a(3). Defendant seems to argue that serving substantially less time in custody than he would have had his

parole been fully revoked is worth being denied the due process rights enumerated above. Such trade-offs are common to the criminal justice system, but they are animated by the principle that the person to whom process is owed has an opportunity to make an informed waiver of such rights. See *Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.").

Mr. Witzke was not given the opportunity to make such a waiver. Ms. Pullins-Govantes made a unilateral decision to "Reinstate w/ ASAT [Advanced Substance Abuse Treatment] programming at the DRC and extend parole term 6 months." R&R at 11. Such a treatment alternative could function as a valuable program to offer a parolee who was given the opportunity to make a voluntary, knowing, and intelligent decision to enter DRC custody in lieu of facing a formal parole revocation.

Mr. Witzke was not that parolee. He waived his right to a preliminary determination of probable cause as to his violation of the conditions of his parole, but that waiver clearly specified, "I understand that waiver of the preliminary hearing is not an admission of guilt and that I still have the right to a full revocation hearing before the Parole and Commutation Board." (R&R at 11). Since he was given neither the due process mandated by *Morrison* and Michigan law, nor the

opportunity to validly waive those rights, Mr. Witzke was incarcerated without the legal process that he was due by law.

Whether his time in custody at the DRC was or was not an "effective revocation of parole" is a semantic dispute that has no bearing on a due process analysis. *Morrison* speaks of parole revocation in general terms not in terms of specific state statutory requirements. What matters is not the technical designation of the procedure used to return the parolee to incarceration, but rather that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often on others." *Morrison*, 408 U.S. 482. Whether a parole violation, or a parole continuation or reinstatement with added conditions, Mr. Witzke's confinement at the DRC indisputably qualifies as the deprivation of a parolee's liberty interest, exactly the deprivation that *Morrison* held must be preceded by due process.

Defendant's second objection, that Mr. Witzke was not entitled to a hearing because he did not ask for one, is also without merit. The Sixth Circuit has held that the burden for proving a waiver of the right to a pre-revocation hearing lies squarely with the state actor, not with the parolee.

> "We are not persuaded by the suggestion in appellees' brief that appellant waived his right to present evidence of mitigating circumstances because he did not make an appropriate request at the hearing. The responsibility rests with the Parole Board to conduct a proper hearing no matter how informal, which meets the basic requirements of due process and which, more specifically, contains those procedures outlined by the Supreme

> Court in *Morrissey*. A waiver of a constitutional right, particularly one involving individual liberty, must be knowingly and intelligently given. In the present case there is no indication in the record that appellant was advised by the Board of his right to present mitigating evidence; nor is there any indication of a specific waiver. Certainly a waiver cannot be presumed from a silent record."

*Preston v. Piggman*, 496 F.2d 270, 274 (6th Cir. 1974) (citations omitted).

In Mr. Witzke's case, the only evidence of a waiver on the record—his waiver of his preliminary probable cause hearing—explicitly excluded his constitutionally-guaranteed revocation hearing.

Defendant's terse third objection also fails to provide a defense. Defendant premises its qualified immunity defense on the absence of a formal revocation of parole, which, as discussed above, is not sufficient to foreclose Plaintiff's due process complaint. Moreover, Defendant could not be entitled to qualified immunity, because the right of a parolee to remain at liberty absent a deprivation hearing (or the valid waiver thereof) is a "clearly established right" within the meaning of *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As the Sixth Circuit has held,

> "Parole is no longer a state of administrative grace that may be summarily and arbitrarily ended at the whim of a parole board. Rather, a parolee has substantial liberty. Although such liberty is not the equivalent of that enjoyed by an ordinary citizen, it is greater than that enjoyed by one incarcerated for a crime. However, this liberty may be restricted, it may not be terminated without the rudiments of procedural due process."

*Preston*, 496 F.2d at 273 (citations omitted).

## CONCLUSION

Michigan Parole Violation Specialists are free to bargain with parolees. Parolees are free to waive their constitutional rights to a full revocation hearing in return for an opportunity to undergo custodial drug treatment instead of risking a formal revocation before the Parole Board. But such bargains must comport with the requirements of due process. In this case, Mr. Witzke was deprived liberty without due process or the opportunity to properly waive his rights. As per the R&R, "the only matters left for trial will be Plaintiff's requests for compensatory and punitive damages…" (R&R at 28).

The Court having reviewed the record, the Report and Recommendation [74] is hereby **ADOPTED** and entered as the findings and conclusions of the Court. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment [60] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Objection [76] is **OVERRULED**.

**SO ORDERED**.

Dated: January 25, 2019

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge